UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ROY TAYLOR,

                                        Plaintiff,

        v.                                                      9:23-CV-0017
                                                                (TJM/ATB)

JOHN DOE AUBURN MEDICAL ADM &
HEALTH CARE PROVIDER and NEW YORK
STATE DEPARTMENT OF CORRECTIONS
EMPLOYEES,

                                        Defendants.

_____

APPEARANCES:

ROY TAYLOR
Plaintiff, pro se
22-B-2111
Cayuga Correctional Facility
P.O. Box 1186
Moravia, NY 13118

THOMAS J. MCAVOY
Senior United States District Judge

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

        Pro se plaintiff Roy Taylor ("plaintiff") commenced this action by filing a complaint

pursuant to 42 U.S.C. § 1983 ("Section 1983") in the United States District Court for the

Southern District of New York ("Southern District") in November 2022, together with an

application to proceed in forma pauperis ("IFP").  Dkt. No. 1 ("IFP Application"); Dkt. No. 2

("Compl.").  In the complaint, plaintiff asserted claims for the violation of his constitutional

1

rights at the Anna M. Kross Center ("AMKC") on Rikers Island and Auburn Correctional Facility ("Auburn C.F."). *See generally* Compl.

By Order filed on December 16, 2022, Chief District Judge Laura Taylor Swain granted plaintiff's IFP Application. Dkt. No. 4. By Order filed on January 5, 2023, District Judge Andrew L. Carter, Jr. severed and transferred plaintiff's claims that arose from events that allegedly occurred at Auburn C.F. to this District. Dkt. No. 6.

In a Decision and Order filed on February 9, 2023 (the "February Order"), this Court reviewed the sufficiency of the claims that arose from events that allegedly occurred at Auburn C.F. in accordance 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Dkt. No. 8. The Court dismissed all claims, without prejudice, for failure to state a cause of action. *Id.* In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint. *Id.*

Plaintiff's amended complaint is now before the Court for review. Dkt. No. 11 ("Am. Compl.").

II.    **REVIEW OF AMENDED COMPLAINT**

   **A. Legal Standard**

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the February Order and will not be restated in this Decision and Order. *See* Dkt. No. 8 at 2-4.

### B.  Summary of Amended Complaint[1]

In the amended complaint, plaintiff identifies John Doe Defendants and Auburn Employees as defendants in the caption.  *See* Am. Compl. at 1.  In the body of the pleading, plaintiff specifically references the following individuals as defendants: Deputy Warden Lowe ("Lowe"), Correctional Officer John Doe #4 (C.O. John Doe #4), Correctional Officer Smith ("Smith"), Correctional Officer O'Harroll ("O'Harroll"), Cashier Amy L. Vantassell ("Vantassell"), Sergeant Thomas ("Thomas"), Cayuga County Clerk Susan M. Maleski ("Maleski"), Correctional Officer Crawford, Correctional Officer McConnell, and Deputy of Security Doe ("Deputy Doe").[2]  *See id.* at ¶¶ 6, 8, 9, 10, 15, 18, 19, 23, 24.  The caption does not list "John Doe Auburn Medical ADM & Health Care Provider" or "New York State Dept of Correction Employees" as defendants.[3]  *See id.* at 1.

The following facts are set forth as alleged by plaintiff in his amended complaint.

On September 2, 2022, plaintiff filed a grievance claiming he was denied access to the law library and unable to perfect a criminal appeal in a timely manner.  Dkt. No. 1-1 at 46.

On September 19, 2022, plaintiff wrote a grievance claiming that Thomas denied him access to the law library.  Dkt. No. 1-1 at 25.  Plaintiff claimed that Thomas refused to allow him to access the library even thought plaintiff explained that he had a "legal deadline to

---

[1]   The amended complaint includes exhibits.  *See* Dkt. Nos. 11-1 and 11-2.  To the extent that the exhibits are relevant to the incidents described in the amended complaint, the Court will consider the amended complaint as well as any documents attached as exhibits.  *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

[2]   The Clerk of the Court is directed to amend the caption accordingly.

[3]   The Clerk is directed to terminate John Doe Auburn Medical ADM & Health Care Provider and New York State Dept of Correction Employees as defendants.

meet." *Id*.

On November 4, 2022, plaintiff filed two grievances complaining that he was being denied adequate access to the law library.  Dkt. No. 1-1 at 33-34.  Plaintiff's grievances were denied.  *Id*. at 28.

On November 1, 2022, plaintiff submitted a disbursement request to Vantassell to pay $15.00 for filing of an Article 78 petition and a habeas corpus petition in Cayuga County Court.  Am. Compl. at ¶ 10; Dkt. No. 1-1 at 2, 3.  The Cayuga County Court previously granted plaintiff's request for a Reduced Filing Fee Order with respect to the petitions.  Am. Compl. at ¶¶ 10, 13; Dkt. No. 1-1 at 13.  Vantassell received notification from the court of the required fees, but did not forward the notice to plaintiff or inquire as to whether he wished to pay the $305.00 filing fee for each petition.  Am. Compl. at ¶ 10.  The costs were "not mandatory" and Vantassell did not give plaintiff the "option to reject to total cost" and "simply have the cases dismissed."  *Id*. at ¶ 11.  As a result, plaintiff received confirmation of payment of $305.00 for each filing.  *Id*. at ¶ 10.

On November 17, 2022, plaintiff received a notice to appear for a video conference from the New York County Supreme Court.  Am. Compl. at ¶ 9; Dkt. No. 1-1 at 16-17.  Plaintiff was not called for the conference and was not provided with copies of the notice.  Am. Compl. at ¶ 9.  The next day, plaintiff asked Smith, the "video conference liaison," why he was not called for the conference.  *Id.*  Smith asked to "see" the notice, but when plaintiff attempted to retrieve it, O'Harroll confiscated the document.  *Id*.

On November 17, 2022, plaintiff wrote a grievance accusing staff of denying him access to the law library in retaliation for prior grievances.  Dkt. No. 1-1 at 29.  Plaintiff also

wrote a letter to Lowe claiming that Smith refused to allow him to appear for a scheduled video conference.  *Id.* at 40.

On November 20, 2022, plaintiff filed a grievance against Vantassell claiming that she "took it upon herself to take out $350.00 twice" when the required fee was $15.00 per petition. Dkt. No. 1-2 at 15.  The Superintendent denied the grievance noting that plaintiff's "application for poor person status was denied by the Supreme Court of Cayuga County."  *Id*. at 18.

During November 2022 and December 2022, Lowe denied plaintiff special access to the Auburn C.F. law library.  Am. Compl. at ¶ 6; Dkt. No. 1-1 at 19.  As a result, plaintiff missed a deadline to file a "notice of intent in state and city court of claims[.]"  Am. Compl. at ¶¶ 6-7.

On December 1, 2022, plaintiff wrote to Lowe complaining about his access to the law library.  Dkt. No. 1-1 at 22-24.  On December 12, 2022, Lowe responded that plaintiff was "abusing [his] right to access by not following the procedures."  *Id*. at 19.

On December 2, 2022, Thomas issued a misbehavior report charging plaintiff with creating a disturbance, interference, harassment, a movement violation, and disobeying a direct order.  Dkt. No. 1-1 at 27.  Thomas reported that plaintiff informed him that he was going to the law library.  *Id*.  Thomas told plaintiff that he had not followed procedures and would not be permitted to cross from the South Yard to the library.  *Id*.  Plaintiff began arguing with Thomas.  *Id*.  Thomas conducted a "pat frisk" during which plaintiff accused Thomas of touching his genitals.  Am. Compl. at ¶ 14; Dkt. No. 1-1 at 27.  Thomas ordered staff to place plaintiff in restraints due to his "erratic behavior" and plaintiff was escorted to

5

his cell.  Dkt. No. 1-1 at 27.

On December 3, 2022, plaintiff sent a letter to Lowe advising that he was being denied access to the law library and suffering from retaliation due to prior grievances.  Dkt. No. 1-1 at 38-39.  Plaintiff complained that Thomas refused to allow him to go to the law library on December 2, 2022 and that Thomas "fondl[ed] [his] private areas" during a pat frisk.  *Id.*

On December 5, 2022, plaintiff filed a grievance complaining that O'Harroll, McConnell, Thomas, and Smith retaliated against him by limiting his access to the law library for "previous grievances" and letters to Lowe.  Dkt. No. 1-1 at 31.  Plaintiff claimed Thomas read his legal work and "violated" him during a pat frisk.  *Id.*

On December 9, 2022, plaintiff completed an Inmate Claim Form seeking to be reimbursed $610.00.  Dkt. No. 1-2 at 29.

On December 14, 2022, plaintiff wrote a letter to Lowe claiming that officers "play[ed] games with funds[.]" Dkt. No. 1-1 at 41.

On December 29, 2022, plaintiff forwarded a letter Maleski and advised that he no longer wished to pursue litigation and requested a refund.  Am. Compl. at ¶ 15; Dkt. No. 1-1 at 9.  Maleski ignored his request and processed both claims.  Am. Compl. at ¶ 15.

In December 2022, plaintiff attempted to "make provisions" to secure the return of his motor vehicle from "NYPD Property Civ Enforcement."  Am. Compl. at ¶¶ 15, 24; Dkt. No. 1-1 at 10.  Plaintiff's request to send money and call the impound facility were denied by Deputy Doe.  Am. Compl. at ¶ 24.  As a result, plaintiff's "chances of the retainment of [his] car" were hindered.  *Id.*

On February 16, 2023 and February 17, 2023, plaintiff approached Crawford to renew his "special access" to the law library.  Am. Compl. at ¶¶ 18, 20.  Crawford refused to issue

the special access and as a result, plaintiff was compelled to write to this Court to request an "enlargement of time." *Id*.

In February 2023, McConnell refused to allow plaintiff access to the law library for "two straight days." Am. Compl. at ¶¶ 18, 21.

Construing the amended complaint liberally, plaintiff asserts the following: (1) First Amendment access-to-court claims; (2) First Amendment retaliation claims; (3) Fourteenth Amendment due process claim against Vantassell and Deputy Doe; and (4) Eighth Amendment deliberate medical indifference claims.  Plaintiff seeks monetary damages.  *See id.* at 20.

### C.  Analysis

#### 1.  First Amendment Access-To-Courts

The law related to First Amendment access-to-court claims was discussed in the February Order and will not be restated herein.  *See* Dkt. No. 8 at 9-10.  In the February Order, the Court found that plaintiff's claims were subject to dismissal because the complaint lacked facts to plausibly suggest that plaintiff suffered an injury in a court proceeding as a result of the defendant's conduct.  *Id*. at 10.  Moreover, plaintiff failed to identify a named defendant personally involved in the constitutional violations.  *Id*.

With the amended complaint, plaintiff attempts to remedy the deficiencies in his claim and alleges he was "unable to perfect a criminal appeal in a timely manner."  Dkt. No. 1-1 at 46.  Plaintiff also claims that he missed a deadline to file a "notice of intent in state and city court of claims" and a video conference with the New York County Supreme Court and "hindered" in his ability to retain his vehicle.  Am. Compl. at ¶¶ 6-7, 9, 24; Dkt. No. 1-1 at 16-

17.

"A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik*, No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53 (noting that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense"). The Supreme Court has stated that, in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*. at 415-16. Here, plaintiff has not described his criminal appeal, his action in the Court of Claims, or his New York County Supreme Court action with any specificity.

Moreover, while plaintiff alleges he was forced to request an extension of time in this matter due to his lack of access to the law library, *see* Am. Compl. at ¶¶ 18, 20, that request was granted. *See* Dkt. Nos. 9, 10. "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' " *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F.Supp. 864, 871 (S.D.N.Y. 1995)).

"Finally, . . . the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Rather, the injury must be to an inmate's ability "to attack [his] sentence[ ], directly or collaterally, [or] . . . to challenge the conditions of [his]

confinement." *Id*. at 355.  "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. Accordingly, plaintiff's allegations with respect to his vehicle do not provide a basis for a First Amendment claim.

Despite being afforded an opportunity to amend his complaint, plaintiff has not sufficiently described his legal claim(s) to allow the Court to conclude that he suffered an actual injury.  Accordingly, plaintiff's First Amendment claims are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).  *See, e.g., Chalif v. Spitzer*, No. 05-CV-1355, 2008 WL 1848650, at *11 (Apr. 23, 2008) ("Since plaintiff's complaint fails to allege any prejudice in the form of interference with his pursuit of a non-frivolous legal claim, this provides an independent basis for dismissal[.]").

### 2. First Amendment Retaliation

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

As to the first element of a retaliation claim, the filing a grievance is constitutionally protected conduct.  *Johnson v. Eggersdorf*, 8 Fed. App'x 140, 144 (2d Cir. 2001).

With respect to "adverse action," the Second Circuit has defined such action as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.' "  *Gill*, 389 F.3d at 381 (citation omitted) (omission in original).  This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights.  *Id.*  Conduct that is de minimis does not give rise to actionable retaliation.  What is de minimis varies according to context.  *Dawes*, 239 F.3d at 493.  As the Second Circuit has pointed out, "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse."  *Dawes,* 239 F.3d at 491 (*quoting Thaddeus-X v. Blatter,* 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc) (per curiam )).  If a retaliatory act against an inmate would not be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection."  *Dawes,* 239 F.3d at 493.  As to the third factor, a plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action.  *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted).

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act."  *Dawes*, 239

10

F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

Here, plaintiff filed several grievances and letters that were general in nature and failed to identify any particular officer. *See* Dkt. No. 1-1 at 22, 24, 29, 33, 34, 41, 46. While plaintiff filed grievances complaining about adverse actions taken by Vantassell, Smith, and O'Harroll, those grievances were filed <u>after</u> the aforementioned actions occurred and therefore, cannot be the basis for a retaliation claim. *See Williams v. Smith*, No. 9:11-CV-0601 (LEK/TWD), 2015 WL 1179339, at *10 (N.D.N.Y. Mar. 13, 2015) ("Adverse actions that predate protected conduct cannot form the basis of a retaliation claim."). Accordingly, plaintiff's retaliation claims against these defendants are dismissed.

A different conclusion is reached however, with respect to Thomas. Plaintiff claims he filed a grievance against Thomas in September 2022 and subsequently, in December 2022, Thomas issued a misbehavior report and "fondled" him during a pat frisk. At this juncture, plaintiff has sufficiently plead a retaliation claim against Thomas to require a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Fourteenth Amendment Due Process

The Supreme Court has held that the unauthorized intentional destruction of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *see Rivera-Powell v. N.Y.C. Bd. of Elections*,

470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post deprivation remedy."); *Davis v. New York*, 311 Fed. App'x 397, 400 (2d Cir. 2009) ("An alleged loss of property, 'whether intentional or negligent-will not support a due process claim redressable under § 1983 if adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533).  "New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001).  Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983.  *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam).

Accordingly, plaintiff's claims against Vantassell and Deputy Doe are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.  *See Richburg v. Williams*, No. 8:10-CV-981, 2011 WL 1631007, at *6 (D.S.C. Mar. 31, 2011) (dismissing the plaintiff's claim that money was improperly deducted from his account because the plaintiff could have instituted a civil action in the state courts to recover his personal property), *aff'd*, 2011 WL 1638049 (D.S.C. Apr. 29, 2011).

### 4.  Claims Against Maleski

Plaintiff claims Maleski ignored his request for a refund of his filing fees and processed his claims.  *See* Am. Compl. at ¶ 15.  A Clerk of the Court is entitled to "absolute quasi-judicial immunity" for the "tasks that are an intergral part of the judicial process."  *See*

*Spillman v. Cully*, No. 08-CV-0008, 2008 WL 4960456, at *1 (W.D.N.Y. Nov. 19, 2008);

*Bliven v. Hon. John Hunt*, 579 F.3d 204, 210-211 (2d Cir. 2009).  As presently plead, the

amended complaint does not contain any facts suggesting that Maleski, as the Clerk of the

Court, engaged in any wrongdoing or acts that were not part of her official tasks "which are

judicial in nature and an integral part of the judicial process."  *See Rivera v. Carroll*, No. 07

Civ. 7847, 2009 WL 2365240, at *4 (S.D.N.Y. Aug. 3, 2009)  (collecting cases).   Accordingly,

plaintiff's claims against Maleski are dismissed.

### 5. Eighth Amendment Deliberate Medical Indifference

The law related to deliberate medical indifference claims was discussed in the

February Order and will not be restated herein.  *See* Dkt. No. 8 at 6-8.  In the February

Order, the Court found that plaintiff's claims were subject to dismissal because plaintiff had

not alleged that any defendant was personally involved in the alleged Eighth Amendment

violations.  The Court noted that plaintiff failed to identify any individual who was involved in

his medical treatment or that he requested, and was denied medical care, from any

defendant.  *Id*. at 8.

Upon review of the amended complaint, the Court finds that plaintiff has failed to

remedy the pleading deficiencies identified in the February Order.  The pleading contains

factual allegations related to medical treatment without dates, times, or the names of

individuals involved.  *See* Am. Compl. at ¶¶ 3, 17, 20, 22; *see* Dkt. No. 1-2 at 1-13.

Thus, plaintiff's Eighth Amendment deliberate medical indifference claims are

dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to

state a claim upon which relief may be granted.

13

## IV.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint (Dkt. No. 11) is accepted for filing and is the operative pleading; and it is further

**ORDERED** that the Clerk of the Court shall take the following action: (1) add to the following defendants to the docket report for this action: Lowe; Correctional Officer John Doe #4; Correctional Officer Smith; Correctional Officer O'Harroll; Cashier Amy L. Vantassell; Sergeant Thomas; Clerk Maleski; Correctional Officer Crawford; and Correctional Officer McConnell; and (2) terminate John Doe Auburn Medical ADM & Health Care Provider and New York State Dept of Correction Employees as defendants; it is further

**ORDERED** that the First Amendment retaliation claim against Thomas survives the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and requires a response; and it is further

**ORDERED** that all remaining claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[4] and it is further

**ORDERED** that Lowe, John Doe #4, Smith, O'Harroll, Vantassell, Maleski, Crawford,

---

[4]  Generally, when a district court dismisses a *pro se* action *sua sponte*, the plaintiff will be allowed to amend his action.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend.  *See Shuler v. Brown*, No. 9:07-CV-0937 (TJM/GHL), 2009 WL 790973, at *5 & n.25 (N.D.N.Y. March 23, 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord*, *Smith v. Fischer*, No. 9:07-CV-1264 (DNH/GHL), 2009 WL 632890, at *5 & n.20 (N.D.N.Y. March 9, 2009); *Abascal v. Hilton*, No. 9:04-CV-1401 (LEK/GHL), 2008 WL 268366, at *8 (N.D.N.Y. Jan.130 2008); *see also Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F. Supp.2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once); *cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading).

and McConnell are terminated as defendants; and it is further

**ORDERED** that upon receipt of the documents for service from plaintiff, the Clerk shall issue a summons and forward it, along with copies of the amended complaint, to the United States Marshal for service upon the remaining defendant.  The Clerk shall forward a copy of the summons and amended complaint to the Office of the Attorney General, via electronic mail, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the amended complaint be filed by the remaining defendant, or counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.**  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

15

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of practice.

**IT IS SO ORDERED.**

**Dated:** April 6, 2023

Thomas J. McAvoy
Senior, U.S. District Judge

16